Scott J. Ferrell (Bar No. 202091)
  sferrell@pacifictrialattorneys.com
**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile:  (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW LOPEZ, individually and on behalf of all others similarly situated, <br><br>      Plaintiff, <br><br>   v. <br><br> STAGES OF BEAUTY, LLC, a Delaware limited liability company; and DOES 1-10, inclusive, <br><br>      Defendants. | Case No. 3:17-cv-01888-MMA-KSC <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> [Request for Judicial Notice filed concurrently herewith] <br><br> Date:   January 29, 2018 <br> Time:   2:30 p.m. <br> Courtroom:   3D <br> Judge: Honorable Michael M. Anello |

1

**TABLE OF CONTENTS**

2

I.    ARGUMENT ........................................................................................... 1

3

    A.    Plaintiff Has Article III Standing to Sue. ...................................... 1

4

        1.    The Complaint Plausibly Alleges an Economic Injury. ....... 1

5

6

        2.    The Complaint Alleges an Intangible, Informational
            Injury. ................................................................................... 1

7

8

        3.    *Kissel v. Omega Natural Science, Inc.* Is
            Distinguishable. ..................................................................... 3

9

    B.    The ARL Provides a Private Right of Action. ................................. 5

10

11

        1.    The Plain Meaning of the ARL Statutes Support
            Plaintiff's Position. ............................................................... 5

12

13

        2.    The ARL's Legislative History Supports Plaintiff's
            Interpretation. ....................................................................... 8

14

15

16

            a)    The Bill Analysis of Senate Bill 340 Cited by
                Defendant Pre-Dated the Amendment Whereby
                the "Unconditional Gift" Provision Was
                Added. ......................................................................... 8

17

18

19

            b)    The Bill Analysis of SB 340 Cited by
                 Defendant Indicates that the UCL and FAL
                 Were Perceived to Be Inadequate. ........................... 10

20

        3.    Defendant Failed to Undertake the Third Step in
             Construing Legislative Intent. ............................................. 11

21

22

        4.    *Johnson v. Pluralsight, LLC* Is Unpersuasive. .................... 11

        5.    *Roz v. Nestle Waters North America* Is Unpersuasive. ........ 14

23

24

    C.    The Complaint Plausibly Alleges that Defendant's Pre-
        Transaction and Post-Transaction Disclosures Violate the
        ARL. ............................................................................................. 15

25

26

27

        1.    The Complaint Alleges that Defendant's Full
            Cancellation Policy Is Not in Visual Proximity to the
            Request for the Consent to the Offer. ................................. 15

28

2.   The Complaint Alleges that Defendant's Post-Transaction Acknowledgment Omits Disclosing Defendant's Full Cancellation Policy. ................................. 20

3.   Defendant Has Failed to Show that It Should Prevail as to Its "Good Faith" Affirmative Defense as a Matter of Law. ............................................................... 22

4.   The ARL Contains No Reliance Requirement. .................................. 22

D.   The Complaint, Which Does Not Sound in Fraud, Adequately Alleges Causation for Purposes of the UCL. ............................ 22

1.   Defendant Misapprehends the Effect of Proposition 64. ............................................................................................... 24

2.   The Complaint Alleges that Plaintiff Suffered an Economic Injury. .......................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Aho v. AmeriCredit Financial Servs., Inc.*,
  277 F.R.D. 609 (S.D. Cal. 2011) ............................................................................... 23

*Backus v. General Mills, Inc.*,
  122 F. Supp. 3d 909 (N.D. Cal. 2015)....................................................................... 23

*Berkson v. Gogo LLC*,
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) ................................................................... 19, 20

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991).......................................................................................................2

*Church v. Accretive Health, Inc.*,
  654 Fed. Appx. 990 (11th Cir. 2016)............................................................................2

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
  432 F.3d 286 (3d Cir. 2005)....................................................................................1, 3

*De La Torre v. CashCall, Inc.*,
  No. 08-cv-03174-MEJ, 2016 WL 6892693 (N.D. Cal. Nov. 23, 2016).....................5

*Estrella v. Brandt*,
  682 F.2d 814 (9th Cir. 1982) .....................................................................................13

*Frezza v. Google Inc.*,
  No. 5:12-cv-00237-RMW, 2013 WL 1736788 (N.D. Cal. 2013) .............................23

*Friends of Animals v. Jewell*,
  824 F.3d 1033 (D.C. Cir. 2016)....................................................................................2

*Friends of Animals v. Jewell*,
  828 F.3d 989 (D.C. Cir. 2016)......................................................................................2

*Hayes v. County of San Diego*,
  658 F.3d 867 (9th Cir. 2011) .....................................................................................13

*In re Hydroxycut Marketing and Sales Practices Litig.*,
  801 F. Supp. 2d 993 (S.D. Cal. 2011)...........................................................................1

*In re Motor Fuel Temperature Sales Practices Litig.*,
292 F.R.D. 652 (D. Kan. Apr. 5, 2013) .................................................. 24

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 624 (2017)............................ 1

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 82 (D. Conn. 2014)............................................................ 5

*Johnson v. Pluralsight, LLC*,
236 F. Supp. 3d 1176 (E.D. Cal. 2017), *appeal docketed*, No. 17-15374
(9th Cir. Mar. 2, 2017) ................................................................ 11, 12, 14

*Kissel v. Code 42 Software, Inc.*,
Case No. 8:15-cv-01936-JLS-KES, 2016 WL 7647691 (C.D. Cal. Apr.
14, 2016) ..............................................................................*passim*

*Kissel v. Omega Natural Science, Inc.*,
No. CV 16-2770-GW, 2016 WL 9019613 (C.D. Cal. Aug. 22, 2016) .............. 3, 4, 5

*Larson v. Trans Union LLC*,
No. 12-cv-05726-WHO, 2016 WL 4367253 (N.D. Cal. Aug. 11, 2016)................... 5

*LaVigne v. First Community Bancshares, Inc.*,
2016 WL 6305992 (D.N.M. Oct. 19, 2016) ................................................ 3

*Lee v. Hertz Corp.*,
No. 15-cv-04562-BLF, 2016 WL 7034060 (N.D. Cal. Dec. 2, 2016) ...................... 5

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ........................................... 2

*Meacham v. Knolls Atomic Power Lab.*,
554 U.S. 84 (2008)....................................................................... 22

*Meza* v. *Verizon Communications, Inc.*,
2016 WL 4721475 (E.D. Cal. Sept. 9, 2016) ............................................. 1

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......................................................... 19

*Noll v. eBay, Inc.*,
309 F.R.D. 593 (N.D. Cal. 2015)......................................................... 5

*Noll v. eBay*,
No. 5:11-cv-04585-EJD, 2013 WL 2384250 (N.D. Cal. May 30, 2013) ................... 5

*Preminger v. Peake*,
552 F.3d 757 (9th Cir. 2008) ....................................................................... 3

*Roz v. Nestle Waters North America*,
Case No. 2:16-cv-04418-SVW-JEM, 2017 WL 132853 (C.D. Cal. Jan.
11, 2017) ......................................................................................... 14, 15

*Safari Club Int'l v. Rudolph*,
845 F.3d 1250 (9th Cir. 2017) ............................................................... 4, 13

*Sayles v. Advanced Recovery Systems, Inc.*,
206 F. Supp. 3d 1210 (S.D. Miss. 2016) ....................................................... 3

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ...................................................................... *passim*

*Strubel v. Comenity Bank*,
842 F.3d 181 (2d Cir. 2016) ....................................................................... 2

*Svenson v. Google Inc.*,
No. 13-CV-04080-BLF, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) .............. 22, 23

*Syed v. M-I, LLC*,
846 F.3d 1034 (9th Cir. 2017) ..................................................................... 1

*Thomas v. FTS USA, LLC*,
193 F. Supp. 3d 623 (E.D. Va. 2016) ........................................................ 3, 4

*United States v. Students Challenging Regulatory Agency Procedures
(SCRAP)*,
412 U.S. 669 (1973) ................................................................................. 3

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ................................................................... 24

*West v. AT&T Co.*,
311 U.S. 223 (1940) ............................................................................... 13

**California Cases**

*In re Steroid Hormone Prod. Cases*,
181 Cal. App. 4th 145 (2010) .................................................................... 23

*In re Tobacco II Cases*,
 46 Cal. 4th 298 (2009) ............................................................22, 23, 24, 25

*Jankey v. Lee*,
 55 Cal. 4th 1038 (Cal. 2012)................................................................... 10

*Kwikset Corp. v. Superior Court*,
 51 Cal. 4th 310 (2011) ............................................................22, 23, 24, 25

*Leader v. Cords*,
 182 Cal. App. 4th 1588 (2010) ............................................................ 8, 13

*Lewis v. Robinson Ford Sales, Inc.*,
 156 Cal. App. 4th 359 (2007) ............................................................ 24, 25

*Lu v. Hawaiian Gardens Casino, Inc.*,
 50 Cal. 4th 592 (2010) ............................................................................ 6

*MacIsaac v. Waste Management Collection & Recycling, Inc.*,
 134 Cal. App. 4th 1076 (2005) ............................................................... 11

*Mayron v. Google, Inc.*,
 No. 1-15-CV-275940, 2016 WL 1059373 (Cal. Superior Ct. Feb. 26,
 2016) (Kirwan, J.) ...................................................................... 12, 13, 14

*Medrazo v. Honda of North Hollywood*,
 205 Cal. App. 4th 1 (2012) ............................................................... 23, 24

*Neary v. Regents of Univ. of Cal.*,
 3 Cal. 4th 273 (1992) ............................................................................ 12

*People v. Gray*,
 229 Cal. App. 4th 285 (2014) ................................................................. 13

*Robinson v. U-Haul Co. of Cal.*,
 4 Cal. App. 5th 304, 317 ................................................................... 24, 25

*Siciliano v. Apple, Inc.*,
 No. 1-13-CV-257676, 2016 Cal. Super. LEXIS 173 (Cal. Superior Ct.
 May 16, 2016) (Kirwan, J.)........................................................... 12, 13, 14

*Simpson Strong-Tie Co., Inc. v. Gore*,
 49 Cal. 4th 12 (2010) ............................................................................ 22

*Troyk v. Farmers Group, Inc.*,
    171 Cal. App. 4th 1305 (2009) .................................................................. 25

*Tuolumne Jobs & Small Bus. Alliance v. Superior Court*,
    59 Cal. 4th 1029 (Cal. 2014)................................................................... 10

**California Statutes**

Business and Professions Code Division 7 pt. 3 Chapter 1 ....................... 7, 11

Business and Professions Code
    § 17200 *et seq.* ...........................................................................*passim*
    § 17500 *et seq.* ....................................................................9, 10, 11, 15
    § 17500 through § 17606 .............................................................................. 7
    § 17534 ................................................................................................. 7, 8
    § 17535 ...........................................................................................*passim*
    § 17600 *et seq.* ...........................................................................*passim*
    § 17600 .............................................................................................. 3, 14
    § 17601(b) ............................................................................................... 17
    § 17601(b)(2) ........................................................................................... 17
    § 17602(a)(1) ..................................................................................... 16, 20
    § 17602(a)(2) ..................................................................................... 16, 20
    § 17602(a)(3) ..................................................................................... 16, 21
    § 17603 ...........................................................................................*passim*
    § 17604 ...........................................................................................*passim*
    § 17604(a) ...................................................................... 7, 8, 14, 15
    § 17604(b) ............................................................................................... 22
    § 22576 ................................................................................................... 23

Code of Civil Procedure
    § 382 ........................................................................................................ 7

**California Rules**

Cal. Rules of Court 8.1115(a) ...................................................................... 13

Cal. Rules of Court 8.1115(b) ...................................................................... 13

**Other Authorities**

Proposed Section § 17607 of Business and Professions Code ......................... 9

Senate Bill 340 (2009-2010 Regular Session) ...................................*passim*

Senate Judiciary Committee Bill Analysis dated Apr. 14, 2009 for Senate
     Bill 340 (2009-2010 Regular Session) ........................................................8, 9, 10, 14

Assembly Judiciary Committee Bill Analysis dated June 30, 2009 for
     Senate Bill 340 (2009-2010 Regular Session) ............................................................9

Original version of SB 340 introduced on Feb. 25, 2009 ..................................................9

Amended version of SB 340 as of Apr. 2, 2009 .................................................................9

Amended version of SB 340 as of Apr. 21, 2009 ............................................................. 9

Amended version of SB 340 as of June 16, 2009 ..................................................9, 10, 14

Amended version of SB 340 as of June 24, 2009 ......................................................9, 10

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.   **ARGUMENT**

    A.   **Plaintiff Has Article III Standing to Sue.**

        1.   **The Complaint Plausibly Alleges an Economic Injury.**

Defendant relies upon *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), to argue that Plaintiff lacks Article III standing to sue.  Defendant's contention is without merit. The Complaint alleges monetary harm via payments made for subscription agreements.[1] (Compl. ¶ 50.)  "'Monetary harm is a classic form of injury-in-fact.'"  *In re Hydroxycut Marketing and Sales Practices Litig.*, 801 F. Supp. 2d 993, 1002 (S.D. Cal. 2011) (quoting *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005)).  In Danvers, then-Circuit Judge Samuel A. Alito, Jr. stated, "While it is difficult to reduce injury-in-fact to a simple formula, *economic injury* is one of its paradigmatic forms."  *Danvers Motor Co.*, 432 F.3d at 291 (emphasis added).  *Danvers* concluded a plaintiff's out-of-pocket expenses or *money spent* was a financial harm that constituted "injury in fact" for federal court standing purposes.  *Id.* at 292.

        2.   **The Complaint Alleges an Intangible, Informational Injury.**

Beside alleging a tangible, economic injury, the Complaint also alleges an intangible, informational injury that satisfies the "concrete" injury requirement of Article III standing to sue.[2]  An *informational injury* has been widely recognized as cognizable under Article III standing by federal courts both before and after *Spokeo*. *See, e.g.*, *Syed v. M-I, LLC*, 846 F.3d 1034, 1040 (9th Cir. 2017) ("The disclosure requirement at issue . . . creates a right to information"); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273-74 (3d Cir. 2016) ("Intangible harms that may give

---

[1] Leave to amend should be granted if the Court would like the Complaint to clarify that Plaintiff was actually charged by Defendant for subscription payments on multiple occasions.

[2] The Complaint does not need to use the phrase "informational injury" because the nature of the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code § 17600 *et seq.*, violation necessarily entails such injury.  *See Meza* v. *Verizon Communications, Inc.*, 2016 WL 4721475, at *4 (E.D. Cal. Sept. 9, 2016).

rise to standing also include harms that 'may be difficult to prove or measure,' such as *unlawful denial of access to information subject to disclosure*.") (emphasis added), *cert. denied*, 137 S. Ct. 624 (2017) (citing *Spokeo*, 136 S. Ct. at 1549-50); *Strubel v. Comenity Bank*, 842 F.3d 181, 190-91 (2d Cir. 2016); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 995 (11th Cir. 2016) ("[Plaintiff] has sufficiently alleged that she has sustained a concrete—*i.e.*, 'real'—injury because she did not receive the allegedly required disclosures."); *id.* at 995 n.2 ("[Plaintiff has not alleged a procedural violation. Rather, Congress provided [Plaintiff] with a substantive right to receive certain disclosures and [Plaintiff] has alleged that [Defendant] violated that substantive right."); *Friends of Animals v. Jewell*, 828 F.3d 989, 994 (D.C. Cir. 2016) ("A plaintiff can demonstrate informational injury . . . where it seeks to enforce section 10(c)'s disclosure requirements."); *Friends of Animals v. Jewell*, 824 F.3d 1033, 1040-41 (D.C. Cir. 2016).

In *Matera v. Google Inc.*, 2016 WL 5339806, at *9, *12 (N.D. Cal. Sept. 23, 2016), the district court held that: *Spokeo* held that two factors may be relevant to whether the violation of statutory rights constitutes injury in fact: (1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural. *Matera*, 2016 WL 5339806, at *9.

The ARL violation at issue bears a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in American courts. Indeed, the harm from contracts of adhesion in which a consumer may not have knowledge of the full terms has been the basis of lawsuits recognized by the common law. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 600 (1991) ("The common law . . . subjects terms in contracts of adhesion to scrutiny for reasonableness.").

In addition, the California Legislature's judgment in establishing the statutory right to the informational disclosures required by the ARL is surely substantive rather

than procedural. "[E]nd[ing] the practice of ongoing charging of consumer credit or debit cards . . . without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of services," (Cal. Bus. & Prof. Code § 17600), is precisely the harm that the Legislature sought to curb by creating a statutory right to certain disclosures under the ARL. "[I]t is the very type of injury [the Legislature] sought to eradicate and thus created a right of action to protect consumers." *Sayles v. Advanced Recovery Systems, Inc.*, 206 F. Supp. 3d 1210, 1213 (S.D. Miss. 2016). Plaintiff has sufficiently alleged that he was deprived of the full cancellation policy within Defendant's ARL-related disclosures. Here, Plaintiff has not alleged a "mere technical violation of a procedural requirement" of the ARL. Unlike other statutes, "there is no 'gap' where some violations of the [ARL] result in the harm [the Legislature] intended to curb, and some [d]o not." *LaVigne v. First Community Bancshares, Inc.*, 2016 WL 6305992, at *5 (D.N.M. Oct. 19, 2016). Thus, the existence of an informational injury caused by an ARL violation should not be treated as a speculative outcome.

Plaintiff is not required to plead any "additional harm" beyond the statutory violation of the ARL. *Spokeo*, 136 S. Ct. at 1549. The *Spokeo* Court recognized that where "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient . . . [and] a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original), *cited in Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 630 (E.D. Va. 2016).

As then-Judge Alito noted in *Danvers*, *supra*, "Injury-in-fact is not Mount Everest." 432 F.3d at 294. An "identifiable trifle" of injury shall suffice. *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973)); *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008) ("The injury may be minimal.").

### 3.  *Kissel v. Omega Natural Science, Inc.* Is Distinguishable.

1    *Kissel v. Omega Natural Science, Inc.*, No. CV 16-2770-GW (SKx), 2016 WL

2    9019613 (C.D. Cal. Aug. 22, 2016), is both distinguishable and unpersuasive.

3    Defendant conveniently omits to mention that that unpublished[3] decision, which, to

4    date, has never been cited by any federal or state court decision for any reason despite

5    its issuance 17 months ago, dismissed ***without prejudice*** the original complaint filed in

6    that case for failure to sufficiently allege a concrete injury under Article III of the

7    Constitution.  Indeed, in so doing, Defendant conveniently omits that the district court

8    expressly recognized that the plaintiff therein might be able to amend her standing

9    allegations.  *Id.* at *4 ("Because it appears that Plaintiff might be able to amend her

10   standing allegations, the dismissal would be without prejudice.").  That's precisely what

11   that plaintiff did insofar as she filed a first amended complaint that cured the perceived

12   pleading deficiency on September 1, 2016.[4]  (*See* RJN Ex. 7.)  Notably, the defendant

13   therein did not move to dismiss the first amended complaint based on standing to sue.

14   Indeed, the defendant did not file ***any*** motion to dismiss in response to such operative

15   complaint.  (RJN Ex. 8.)  Thus, Defendant's reliance upon a ruling which addressed a

16   perceived pleading deficiency, which ultimately was cured, is misplaced.

17       Moreover, the court's reasoning in *Omega Natural Science* is unpersuasive and

18   flawed.  In particular, the court made no attempt to apply any test (including the

19   Supreme Court's two-pronged test identified in *Spokeo*) to determine whether the

20   plaintiff's alleged intangible injury via an informational injury was concrete.  Indeed,

21   the court failed to even use the phrase "informational injury" in its decision.  In footnote

22   2, the court sought to distinguish *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 635

23   (E.D. Va. 2016) (E.D. Va. June 30, 2016) ("where a consumer alleges, as [plaintiff] has

24   here, that he or she has received a disclosure that does not satisfy those requirements,

25   the consumer has alleged a concrete informational injury"), by stating that the plaintiff

26   ───────────────
     [3]  *Safari Club Int'l v. Rudolph*, 845 F.3d 1250, 1262 n.7 (9th Cir. 2017) (referring to
     Westlaw rulings as "unpublished").

27   [4]  Notably, the original complaint under review in that case failed to expressly allege
     either a tangible, economic injury nor an intangible, informational injury.

28

fell short of showing a privacy injury even though that was not the alleged injury at issue therein. This underscores the fact that *Omega Natural Science* is poorly reasoned.

Given the staggering volume of case law recognizing informational injuries as a sufficient "concrete injury" for standing purposes,[5] there is little doubt that Judge Wu would have ruled differently had he had the opportunity to review such case law in toto.

## B. The ARL Provides a Private Right of Action.

Defendant's contention that the ARL does not provide a private right of action is wrong. Indeed, multiple federal courts have recognized that ARL claims are viable. *See, e.g., Kissel v. Code 42 Software, Inc.*, Case No. 8:15-cv-01936-JLS-KES, 2016 WL 7647691, at *6-*7 (C.D. Cal. Apr. 14, 2016) (recognizing ARL provides for a civil cause of action); *In re Trilegiant Corp., Inc*., 11 F. Supp. 3d 82, 126 (D. Conn. 2014) (finding that the ARL "provides a private cause of action for customers who are harmed in California."); *Noll v. eBay*, No. 5:11-cv-04585-EJD, 2013 WL 2384250, at *6 (N.D. Cal. May 30, 2013) (suggesting that in the ARL, the California Legislature provided a private right of action for only in-state consumers); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 600 (N.D. Cal. 2015) (granting final approval of class settlement alleging violations of the ARL and UCL).

## 1. The Plain Meaning of the ARL Statutes Support Plaintiff's Position.

First, Defendant conveniently ignores the existence of the "unconditional gift" statute, *i.e.*, Bus. & Prof. Code § 17603, in analyzing whether the ARL itself provides a

---

[5] *See, e.g., Lee v. Hertz Corp.*, No. 15-cv-04562-BLF, 2016 WL 7034060, at *5 (N.D. Cal. Dec. 2, 2016) ("The Court agrees that the deprivation of statutorily mandated information can cause an intangible but concrete harm, if that harm is of the type Congress sought to prevent."); *De La Torre v. CashCall, Inc.*, No. 08-cv-03174-MEJ, 2016 WL 6892693, at *8 n.8 (N.D. Cal. Nov. 23, 2016) (noting that "liability for non-disclosure of information" is a "persuasive indication[]" of the plaintiff's Article III standing); *Larson v. Trans Union LLC*, No. 12-cv-05726-WHO, 2016 WL 4367253, at *3 (N.D. Cal. Aug. 11, 2016) (holding that the plaintiff's "claim is based on the sort of 'informational' injury that the *Spokeo* Court implicitly recognized. . . and that a number of other cases, from both before *Spokeo* and after, have found sufficient to support Article III standing").

---

private right of action.  This is no small oversight.  Although Defendant cites to *Lu v. Hawaiian Gardens Casino, Inc*., 50 Cal. 4th 592, 596 (2010), for its guidance of the circumstances whereby the Legislature has manifested an intent to create a private right of action under a statute, Defendant has omitted a key portion of such decision.   In *Lu*, the California Supreme Court held, "A statute may contain 'clear, understandable, unmistakable terms,' which strongly and directly indicate that the Legislature intended to create a private cause of action." *Id*. at 597.  "For instance, the statute may expressly state that a person has or is liable for a cause of action for a particular violation." *Id*. (citations omitted).  "***Or, more commonly, a statute may refer to a remedy*** or means of enforcing its substantive provisions, *i.e*., by way of an action." *Id*. (citations omitted) (emphasis added).   Defendant's Motion omits that the Legislature's intent can be discerned via a statute that refers to a remedy or means of enforcing its substantive provisions.  That key omission has undermined Defendant's plain meaning analysis.

Second, Defendant ignores the fact that the California Legislature intentionally placed the ARL within the same chapter as § 17535 of the Business and Professions Code, which means that the ARL provides consumers with remedies of injunctive relief and restitution via § 17535 of the Business and Professions Code.  *Code 42 Software*, 2016 WL 7647691, at *6-*7.   The ARL provides a private right of action as demonstrated by the injunctive relief and restitution remedies available to aggrieved consumers via § 17535 of the Business and Professions Code, which provides:

> "Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate ***this chapter*** may be ***enjoined by any court of competent jurisdiction***. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person, corporation, firm, partnership, joint stock company, or any other association or organization of any practices which violate ***this chapter***, or which may be necessary to ***restore to any person in interest any money or property, real or personal***, which may have been acquired by means of ***any practice in this chapter declared to be unlawful***.
> Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney, county counsel, city attorney, or city prosecutor in this state in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association ***or by any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter***. Any person

> may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of this section and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state."

(Cal. Bus. & Prof. Code § 17535) (emphasis added). Thus, § 17535 provides relief against any person or entity which violates "this chapter," which is a reference to Chapter 1 of Part 3 of Division 7 of the Business and Professions Code. Chapter 1 encompasses § 17500 through § 17606 of the Business and Professions Code. That is, Chapter 1 includes ***both § 17535 and all statutes that comprise the ARL***. Because the California Legislature intentionally placed the ARL within the same chapter as § 17535, this means that the ARL provides consumers with remedies of injunctive relief and restitution via § 17535 of the Business and Professions Code.

Third, Defendant ignores the fact that the California Legislature exempted any criminal liability for ARL violations via § 17604(a), but allowed all other provisions including civil remedies (including the remedies in § 17535) for violations of the ARL to apply. Section 17534 of the Business and Professions Code provides:

> "Any person, firm, corporation, partnership or association or any employee or agent thereof who violates ***this chapter*** is guilty of a misdemeanor."

(Cal. Bus. & Prof. Code § 17534) (emphasis added). The reference to "this chapter" is a reference to Chapter 1 of Part 3 of Division 7 of the Business and Professions Code, which contains both the ARL statutes and § 17534. Section 17604 of the Business and Professions Code provides in relevant part:

> "Notwithstanding Section 17534, a violation of ***this article*** shall not be a crime. However, all available civil remedies that apply to a violation of ***this article*** may be employed."

(Cal. Bus. & Prof. Code § 17604(a)) (emphasis added). The reference to "this article" is a reference to Article 9, which only contains the ARL statutes. In other words, this careful attempt by the Legislature to exempt any criminal liability for ARL violations via § 17604(a), but to allow all other provisions including civil remedies (including the remedies in § 17535) for violations of the ARL to apply is significant. *Code 42 Software*, 2016 WL 7647691, at *7.

Fourth, Defendant ignores that the ARL is a remedial statute, which, by definition, is broadly construed under the ordinary rules of statutory construction of California law. *See Leader v. Cords,* 182 Cal. App. 4th 1588, 1598 (2010) (a remedial statute "must be liberally construed 'to effectuate its object and purpose, and to suppress the mischief at which it is directed'"). This key oversight taints all of Defendant's plain meaning analysis.

**2.    The ARL's Legislative History Supports Plaintiff's Interpretation.**

Defendant resorts to citing legislative history to understand § 17604 of the Business and Professions Code, which states, "Notwithstanding Section 17534, a violation of this article shall not be a crime. However, ***all available civil remedies*** that apply to a violation of this article may be employed." (Cal. Bus. & Prof. Code § 17604(a) (emphasis added)). Even if the ARL's legislative history is considered, such legislative history, if anything, supports Plaintiff's interpretation.

**a)    The Bill Analysis of Senate Bill 340 Cited by Defendant Pre-Dated the Amendment Whereby the "Unconditional Gift" Provision Was Added.**

The portion of legislative history cited by Defendant, *i.e.*, the Senate Judiciary Committee Report dated April 14, 2009 for Senate Bill 340 ("SB 340") (2009-2010 Regular Session), (Mtn. Dism. at 9:5-14), which became the ARL, as amended as of April 2, 2009, does not support Defendant's interpretation of § 17604 of the ARL. That's because the specific legislative history cited by Defendant was issued ***prior to*** the key amendment (including for the first time an "unconditional gift" provision) to SB 340, which would eventually become enacted as the ARL. The only way to harmoniously reconcile the language in such legislative history with the subsequent amendment to SB 340 is to construe such language consistent with the "unconditional gift" remedy that was enacted as § 17603 of the Business and Professions Code.

Defendant cited the following portion of the Senate Judiciary Committee Report dated April 14, 2009 for SB 340:

> "Senate Bill 340 would provide that a violation of its provisions would not be a crime, but ***all applicable civil remedies would be available***.

> Under the FAA [False Advertising Act], any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney.  Under the UCL, a private party may bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party.  However, the party must have suffered injury in fact and lost money or property."

(RJN Ex. 3 at 5-6; Mtn. Dism. at 9:6-14) (emphasis added).  Significantly, the cited portion of the Senate Judiciary Committee Report says absolutely nothing about the "unconditional gift" provision that was ultimately included within § 17603 of the Business and Professions Code.  This omission is not surprising given that at the time that the Senate Judiciary Committee Report was issued on April 14, 2009 (reflecting the amended version of the bill as of April 2, 2009), ***the "unconditional gift" provision did not exist in SB 340***.  (RJN Ex. 2.)  Indeed, a careful review of the legislative history of SB 340 reveals that the "unconditional gift" provision did not become a part of SB 340 ***until that bill was amended by the state Assembly on June 16, 2009***.  RJN Ex. 5.[6]  In particular, the June 16, 2009 amendment to SB 340 inserted an "unconditional gift" provision for the first time as proposed § 17607 of the Business and Professions Code.[7]  It was subsequently renumbered as § 17603 via a subsequent amendment (by the

---

[6] Plaintiff's Request to Take Judicial Notice includes the original version of SB 340, introduced by Senator Yee on February 25, 2009, as well as the amended versions of SB 340, which were amended as of April 2, 2009, April 21, 2009, and June 16, 2009. (RJN Exs. 1-2, 4-5.)

[7] Proposed § 17607 stated, "In any case in which a business sends any goods, wares, merchandise, or products to a customer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the customer's affirmative consent to automatic renewal offer terms or to any material change in the terms of the automatic renewal, as described in this article, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the customer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the customer's part to the business, including, but not limited to, bearing the cost of or responsibility for shipping any goods, wares, merchandise, or products to the business."  (RJN Ex. 1 at 8-9.)

Assembly) on June 24, 2009. Thus, Defendant's reliance on the Senate Judiciary Committee's Report dated April 14, 2009, which was several months **prior to** the inclusion of the "unconditional gift" provision within SB 340, provides no guidance or support for Defendant's interpretation of the ARL with respect to the interpretation as to the scope or meaning of § 17604.[8]

If anything, the fact that the "all available" phrase that has existed since the original version of SB 340 was introduced, (RJN Ex. 1), remained in the final version of SB 340, as enacted by the Legislature, indicates that such language must be construed in a manner that is harmonious to the amendment of SB 340 that occurred on June 16, 2009 via the addition of the "unconditional gift" provision in what would eventually become § 17603. Any other construction would do violence to the ARL's carefully crafted statutory scheme. *Jankey v. Lee*, 55 Cal. 4th 1038, 1047 (Cal. 2012) ("We would do violence to the language of the statute were we to disregard that change."); *Tuolumne Jobs & Small Bus. Alliance v. Superior Court,* 59 Cal. 4th 1029, 1037 (Cal. 2014) ("statutes must be harmonized, both internally and with each other, to the extent possible").

      **b)**      **The Bill Analysis of SB 340 Cited by Defendant Indicates that the UCL and FAL Were Perceived to Be Inadequate.**

If anything, the legislative history cited by Defendant, the Senate Judiciary Committee Report dated April 14, 2009 for SB 340, indicates that the ARL, which was enacted in 2010, was enacted because of the perceived inadequacy of the UCL, which was enacted in 1977, and statutes like it, in protecting California consumers from the specific type of conduct that the ARL was enacted by the California Legislature to prevent. That Senate Judiciary Committee Report stated:

---

[8] Given that Defendant relies upon such legislative history regarding the Senate Judiciary Committee's Report dated April 14, 2009, Defendant should have brought this to the Court's attention via its initial moving papers. Needless to say, Defendant's reliance on the Senate Judiciary Committee's Report dated April 14, 2009 before SB 340 was amended to include any version of the "unconditional gift" remedy provision under these circumstances was highly misleading.

"Current consumer protection statutes do not address automatic renewal clauses or provisions in subscriptions or purchasing agreements.   Senate Bill 340 is intended to close this gap in the law."

(RJN Ex. 3 at 1.)   That Report referenced the UCL and what it characterized as the "False Advertising Act", Cal. Bus. & Prof. Code § 17500 *et seq.*, as existing law.  Thus, the legislative history reflected a legislative intent to significantly strengthen then-existing California consumer protection law, which was perceived by the Legislature as leaving a significant enforcement gap, thereby justifying legislative action.

### 3.   Defendant Failed to Undertake the Third Step in Construing Legislative Intent.

Defendant also failed to undertake the third and final step in the interpretive process to apply "reason, practicality, and common sense to the language at hand." *MacIsaac v. Waste Management Collection & Recycling, Inc.*, 134 Cal. App. 4th 1076, 1084 (2005).  To avoid rendering the "unconditional gift" provision in § 17603 from becoming a nullity in any context (including the context in which a consumer alleges an ARL violation involving a recurring subscription plan involving a so-called "tangible" good or "product"), the only reasonable interpretation is that the ARL provides a private right of action.  Otherwise, the purpose underlying the ARL, which was intended to "close [the] gap in the law," (RJN Ex. 3 at 1), would be completely thwarted.

### 4.   *Johnson v. Pluralsight, LLC* Is Unpersuasive.

Defendant's reliance on *Johnson v. Pluralsight, LLC*, 236 F. Supp. 3d 1176 (E.D. Cal. 2017), *appeal docketed*, No. 17-15374 (9th Cir. Mar. 2, 2017), is misplaced as that decision is unpersuasive for the exact same reasons set forth above in Sections III.B.1, B.2, and B.3, *supra*.  In addition, although the *Pluralsight* court sought to distinguish *Code 42 Software*'s analysis above, its reasoning is unpersuasive.

First, the court's order failed to challenge or in any way dispute the fact that § 17535 of the Business and Professions Code is within the same chapter as the ARL, namely, Chapter 1 of Part 3 of Division 7 of the Business and Professions Code.  In other words, the reality is that consumers can, in fact, rely upon the injunctive relief and

- 11 -

restitution remedies set forth in § 17535 of the Business and Professions Code in response to ARL violations.

Second, the court relied upon the phrase "under this section" in regards to "[a]ctions for injunctions" in the second paragraph of § 17535 as revealing the Legislature's intent that such a cause of action be pursued "under § 17535 itself." 236 F. Supp. 3d at 1181.  Plaintiff submits that such interpretation is wrong.  For example, the court's analysis fails to point to any similar reference in § 17535 to actions for restitution being "under this section".  If anything, the reference to "under this section" is intended to indicate that claimants who seek to invoke the injunctive relief remedy whose authority is derived from § 17535 must meet the standing requirements of § 17535.  That is a far cry from the court's position that § 17535 cannot be construed as providing a remedy for ARL violations.  Indeed, assuming *arguendo* that the court's analysis is correct in that "such a cause of action [for injunctive relief] be pursued under § 17535 itself," 236 F. Supp. 3d at 1181, then the court should have construed the plaintiff's action as seeking relief under § 17535 (and allowing it to proceed thereunder) instead of dismissing the entire Complaint.  236 F. Supp. 3d at 1184.  The fact that the court did not construe the plaintiff's claim as viable even under § 17535 is telling.

Third, the court's reliance upon *Mayron v. Google, Inc.*, No. 1-15-CV-275940, 2016 WL 1059373 (Cal. Superior Ct. Feb. 26, 2016) (Kirwan, J.), a ruling on a demurrer issued by the Superior Court of California, Santa Clara County, and *Siciliano v. Apple, Inc.*, No. 1-13-CV-257676, 2016 Cal. Super. LEXIS 173 (Cal. Superior Ct. May 16, 2016) (Kirwan, J.), a ruling on a motion for judgment on the pleadings issued by the Superior Court of California, Santa Clara County, is misplaced because *Mayron* and *Siciliano* provide no guidance at all as to California law.  *See Neary v. Regents of Univ. of Cal.*, 3 Cal. 4th 273, 282 (1992) ("[T]he Court of Appeal decision incorrectly suggests that a trial court judgment provides guidance to other courts and litigants.  Not so.  '[T]rial courts make no binding precedents.'") (citation omitted).  If *Mayron* or

*Siciliano* had been a citable (*i.e.*, published[9]) *intermediate* state appellate court decision, then they could have been a "datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Hayes v. County of San Diego*, 658 F.3d 867, 872 (9th Cir. 2011) (quoting *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982) (quoting *West v. AT&T Co.*, 311 U.S. 223, 237 (1940))). The fact remains, however, that neither *Mayron* nor *Siciliano* qualify as an "intermediate state appellate court decision" and so neither ruling should have been considered to be a "datum for ascertaining state law" by the court.

Fourth, *Mayron* and *Siciliano* are unpersuasive. What is noticeably absent from the superior court's analysis in either *Mayron* or *Siciliano* is any reference whatsoever recognizing that the ARL is a remedial statute, which is broadly construed under ordinary rules of statutory interpretation applicable under California law. *Leader,* 182 Cal. App. 4th at 1598. Thus, that key oversight has tainted the outcome of the superior court's rulings in either decision.

Moreover, although both *Mayron* and *Siciliano* cited and relied upon § 17604 and its reference to "all available civil remedies" as implying that the Legislature intended for ARL violations to be enforced solely via other existing causes of action, neither ruling recognized the significance of the timing of the "unconditional gift" provision into SB 340, which was not contained in either the original version of SB 340 as introduced nor in an amended version that was addressed by the Senate Judiciary Committee Report dated April 14, 2009, which was heavily cited and relied upon in *Siciliano*.[10] Thus, although *Siciliano* did rely upon certain legislative history in the

---

[9] The *Mayron* ruling, which merely appears on Westlaw, is unpublished. *Safari Club Int'l v. Rudolph*, 845 F.3d 1250, 1262 n.7 (9th Cir. 2017) (referring to Westlaw rulings as "unpublished"). The *Siciliano* ruling is not even available on Westlaw. "It is improper to cite to or rely upon unpublished [California] opinions." *People v. Gray*, 229 Cal. App. 4th 285, 292 n.15 (2014); Cal. Rules of Court 8.1115(a) & (b).

[10] *Mayron* did not cite any legislative history in support of its ruling that § 17603 is "not intended to authorize a consumer to bring an action." *Mayron*, 2016 WL 1059373, at *3.

form of the Senate Judiciary Committee Report dated April 14, 2009, that court failed to recognize that at that time *the "unconditional gift" provision did not exist in SB 340*. (RJN Ex. 2.)  Neither *Mayron* nor *Siciliano* addressed the fact that the "all available" phrase that has existed since the original version of SB 340 was introduced, (RJN Ex. 1), and remained in the final version of SB 340 (in § 17604(a)), as enacted by the Legislature, must be construed in a manner that is harmonious to the amendment of SB 340 that occurred on June 16, 2009 via the addition of the "unconditional gift" provision in what would eventually become § 17603. *Mayron*'s and *Siciliano*'s construction of § 17604 and its reference to "all available civil remedies" fails to harmonize that statutory provision with § 17603, the unconditional gift statute, which immediately precedes § 17604.

Finally, the court in *Pluralsight*, relying heavily upon *Mayron*, held that even a consumer who purchased a subscription for "tangible goods" could not sue under the ARL itself as a result of an ARL violation in order to recover the "unconditional gift" remedy.  *Mayron*, 2016 WL 1059373, at *3 (stating that the defendant's argument that "Section 17603 is only intended as a *shield* against a seller seeking payment for a good sent in violation of the Automatic Renewal Law" "makes sense") (emphasis added). Such extreme interpretation of the ARL completely undermines the purpose underlying the ARL, which was intended to "close [the] gap in the law."  (RJN Ex. 3 at 1.)  "It is the intent of the Legislature to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  (Cal. Bus. & Prof. Code § 17600.)

### 5.  *Roz v. Nestle Waters North America* Is Unpersuasive.

Defendant's reliance on *Roz v. Nestle Waters North America*, Case No. 2:16-cv-04418-SVW-JEM, 2017 WL 132853 (C.D. Cal. Jan. 11, 2017), is similarly misplaced as that decision is unpersuasive as to the issue of whether the ARL can be enforced via

a private right of action under the ARL itself.  Indeed, the *Roz* decision, in turn, failed to address or distinguish the *Code 42 Software* decision at all.

Furthermore, although the district court in *Roz* held that the ARL did not provide a private right of action, that court held that the plaintiffs had standing to sue under the UCL/FAL because of § 17603, which is the unconditional gift statute.  *Id.* at *7.  In other words, on one hand, the court in *Roz* inexplicably ignored the impact of the unconditional gift statute in analyzing whether the ARL was intended to provide a private right of action despite acknowledging that the plaintiff in that case made this very argument, *id.* at *4, but, on the other hand, the court relied on that unconditional gift statute in order to find that the plaintiffs had statutory standing under the UCL/FAL, *id.* at *7.  Needless to say, *Roz* is poorly reasoned insofar as the district court in that decision ignored the existence of the unconditional gift statute in analyzing whether the ARL itself provides a private right of action.  It also overlooked the fact that the California Legislature intentionally placed the ARL within the same chapter as § 17535, which means that the ARL provides consumers with remedies of injunctive relief and restitution via § 17535 of the Business and Professions Code.  It also overlooked the fact that the Legislature exempted any criminal liability for ARL violations via § 17604(a), but allowed all other provisions including civil remedies (including the remedies in § 17535) for violations of the ARL to apply.  Thus, *Roz* is unpersuasive in terms of its ruling regarding the lack of a private right of action under the ARL itself.

**C.    The Complaint Plausibly Alleges that Defendant's Pre-Transaction and Post-Transaction Disclosures Violate the ARL.**

   **1.    The Complaint Alleges that Defendant's Full Cancellation Policy Is Not in Visual Proximity to the Request for the Consent to the Offer.**

As Defendant is well aware, Defendant's legal arguments to the Court and recitation of the purported relevant facts deliberately omitted key factual allegations in the Complaint.  (*See, e.g.*, Compl. ¶ 18) (alleging that your client's webpage in visual

1   proximity to the request for the consent to the offer does not specify that your client's
2   telephone number must be called at least one day prior to the date the subscription's
3   next monthly delivery ships in order to cancel the subscription).

4          Defendant contends that "Defendant's pre-transaction . . . disclosures comply
5   with *all* of ARL's requirements." (Mtn. at 1:13-14) (emphasis added). Defendant
6   contends that it "provides *all* of the terms of its automatic renewal program in clear and
7   conspicuous manner in visual proximity to where Plaintiff was required to consent to
8   the program."[11] *Id.* at 16:4-6 (emphasis added). Not so.

9          Defendant contends that "[t]he illustration on page 6 of the Complaint confirms
10  such compliance." (Mtn. at 1:19-20.)   In particular, Defendant contends that its
11  cancellation policy is merely to "call the phone number provided to cancel." (Mtn.
12  Dism. at 12:5-6.)   Such illustration, however, does not contain Defendant's *full*
13  cancellation policy, which includes the following term within Defendant's online
14  "Terms of Offer":

15          "To cancel future shipments, you must call 1-877-869-3162 at least 1 day prior to
16          the date that your next monthly delivery ships."

17  (Ferrell Decl. ISO Opp'n Mtn. Sanctions ¶¶ 2, 16 & Exs. 1, 9.) Defendant's "Terms of
18  Offer" are available for viewing by the general public via a hyperlink named "terms of
19  use" that is located at the bottom of the publicly viewable website at
20  www.stagesofbeauty.com.  The May 15, 2017 version of the document that is visible by
21  clicking such link was named "Stages of Beauty – Terms of Offer" whereas the version
22  that exists currently (viewed by Plaintiff's counsel as of December 15, 2017) is entitled
23  "Stages of Beauty VIP Membership Program – Terms of Offer." (*Compare* Ferrell
24  Decl. Ex. 1 *with* Ferrell Decl. Ex. 9.)  Substantive changes to the text of such "Terms of
25  Offer" exist as demonstrated via a redline comparison document created by Plaintiff's

26  _____
    [11] Defendant's contention that Plaintiff does not dispute whether Defendant complied
27  with section 17602(a)(1), (2) & (3) of the Business and Professions Code, (Mtn. at 16:4-
    6), is wishful thinking, at best, or a willful and deliberate gross mischaracterization of
28  Plaintiff's position, at worst.  Either way, Defendant is wrong.

counsel that accurately reflects the changes made to such "Terms of Offer" between May 15, 2017 and December 15, 2017.  (Ferrell Decl. ¶ 17 Ex. 10.)

What is patently obvious from the image of Defendant's final offer webpage on its website, which is depicted in paragraph 18 of the Complaint (page 6) is that such webpage did not identify or disclose Defendant's full cancellation policy as identified above in "visual proximity" to the "request for the consent to the offer" on the webpage containing the "RUSH MY SAMPLE" button.  As such, this constitutes a violation of the ARL because it violates § 17601(b)(2) of the California Business and Professions Code.   Thus, Defendant's contention that the image depicted on page 6 of the Complaint "contains *all* of the terms and conditions of the automatic renewal program," (Mtn. Dism. at 3:5-7) (emphasis added), is patently false.

Paragraph 18 of the Complaint expressly alleges that Defendant's full cancellation policy is not in "visual proximity" to the "request for the consent to the offer" on the webpage containing the "RUSH MY SAMPLE" button, as legally required by the ARL, by alleging:

> "During the Class Period, Defendant made an automatic renewal offer for its subscriptions plans to Consumers in California and throughout the United States, including Plaintiff and Class Members.  On the pages on the website where a prospective subscriber is invited to complete a purchase, the pages did not contain automatic renewal offer terms or continuous service offer terms as defined by Cal. Bus. & Prof. Code § 17601(b).  *Specifically*, although the page references cancellation and gives a phone number for cancellation, *it does not specify, as do terms set forth later in the website, that that number must be called at least one day prior to the date the subscriber's next monthly delivery ships, and thus does not contain a full description of the cancellation policy in visual proximity to the request for consent to the offer, as required by the statute*.

(Compl. ¶ 18) (emphasis added).

Significantly, Defendant makes no attempt to address the foregoing allegations in the instant Motion.[12]   Instead, Defendant seeks to sidestep Plaintiff's allegation by

---

[12] Defendant undertakes a fleeting attempt to address the foregoing allegation in its Motion for Sanctions by asserting in conclusory fashion that the fact that "a customer must call to cancel before the product is shipped" at least one day before the subscriber's next monthly delivery ships is "not required by the statute."  (Mtn. Sanctions at 16:12-14.)  So what?  The fact that the ARL does not prescribe any specific
Continued on the next page

asserting that the webpage image depicted on paragraph 18 of the Complaint indicates that:

> "Plaintiff intentionally and affirmatively checked a box *identifying all* of the terms and conditions of Defendant's auto renewal program before he was permitted to complete the transaction."

(Mtn. Dism. at 3:12-15) (emphasis added).   Defendant's contention is highly misleading.   First, the "box" that is checked on the webpage depicted on paragraph 18 of the Complaint does not "identify" "all" of the terms and conditions of Defendant's auto renewal program as asserted by Defendant because such webpage does not identify Defendant's full cancellation policy, which requires consumers to call Defendant's customer service telephone number "at least 1 day prior to the date that [the consumer's] next monthly delivery ships."   (Ferrell Decl. ¶¶ 2, 16 & Exs. 1, 9.)   Thus, Defendant's contention is factually inaccurate.   Second, it appears that Defendant's goal is to indirectly assert that by checking the box on the webpage depicted on paragraph 18 of the Complaint, that Plaintiff (and the rest of the putative class that he seeks to represent) have consented to the document (*i.e.*, Defendant's "Terms of Offer") that is available for viewing via the hyperlink named "terms of use" at the bottom of Defendant's website.   But, that argument is surely wrong because the specific language used next to the box at issue does not make any reference to any "Terms of Offer" or terms and conditions, and instead merely states:

> "I understand that unless I cancel within 18 days, I will be sent a one-month supply of Adaptive Tripeptide Serum for just $79.99 + $4.99 S&H and applicable sales tax beginning 18 days from now and every 30 days thereafter."

Continued from the previous page

cancellation policy is of no moment.   What matters is that Defendant's cancellation policy includes such provision.   Therefore, the ARL requires that such information be clearly and conspicuously disclosed in visual proximity to the request for the consent to the offer to California consumers.

In addition, Defendant asserted in its Motion for Sanctions that Plaintiff, at most, has identified a "very minor technical violation of the ARL" without citation to any supporting case authority.   (Mtn. Sanctions at 16:15-16.)   Plaintiff disagrees with Defendant's characterization.   The ARL does not differentiate between any of its violations as "major" or "serious", on one hand, and "minor" or "inconsequential", on the other hand.

(Compl. ¶ 18.)  This acknowledgment does not come close to stating that the consumer acknowledges any consent to Defendant's online "Terms of Offer" available via Defendant's website.  In essence, Defendant is indirectly claiming that Plaintiff (and the rest of the putative class) entered into a "click-wrap" type of electronic adhesion contract "in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015) ("Clickwrap agreements require a user to affirmatively click a box on the website ***acknowledging awareness of and agreement to the terms of service*** before he or she is allowed to proceed with further utilization of the website.") (emphasis added and citation omitted).  Alternatively, Defendant is claiming that Plaintiff entered into a browsewrap agreement, "where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen," *Nguyen*, 763 F.3d at 1176, but that there is constructive notice and assent because "the user is required to affirmatively acknowledge the agreement before proceeding with use of the website," *id.*, or with the transaction to purchase the subscription.  The Ninth Circuit has held, however, that "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound."  *Id.* at 1179.

While it is true that "[c]ourts, in general, find [clickwrap agreements] enforceable,[13] 97 F. Supp. 3d at 397, Defendant's particular electronic adhesion contract makes absolutely no reference at all to its online "Terms of Offer."  Defendant fails to put consumers like Plaintiff on notice of its electronic hyperlinked "Terms of Offer", and also fails to obtain a consumer's consent to such "Terms of Offer".  Thus, it is very misleading for Defendant to claim that Plaintiff (and the rest of the putative class) affirmatively and expressly consented to Defendant's online "Terms of Offer" merely

---

[13] "Courts of Appeals, while accepting the general definition of what constitutes a clickwrap agreement, have yet to rule on their presumptive validity." *Berkson*, 97 F. Supp. 3d at 397.

by checking the box on the final order webpage with the "RUSH MY SAMPLE" button.  (Mtn. Dism. at 13:1-3.)  This is not a situation in which "the consumer is prompted to examine terms of sale that are located somewhere else."  *Berkson*, 97 F. Supp. 3d at 400.  Needless to say, if Defendant failed to obtain consent to Defendant's full cancellation policy, then this circumstance supports Plaintiff's contention that Defendant violated section 17602(a)(2) of the Business and Professions Code separate and apart from the alleged violation of section 17602(a)(1).

> ### 2.   The Complaint Alleges that Defendant's Post-Transaction Acknowledgment Omits Disclosing Defendant's Full Cancellation Policy.

Defendant contends that "Defendant's . . . post-transaction disclosures comply with ***all*** of ARL's requirements."  (Mtn. Dism. at 1:15-16) (emphasis added).  Not so.

Defendant omits to mention that the Complaint alleges that Defendant's post-transaction written acknowledgment omits disclosure of Defendant's full cancellation policy.  (*See* Compl. ¶ 21) (alleging that your client's post-transaction acknowledgment or purchase confirmation fails to specify that your client's telephone number must be called at least one day prior to the date the subscription's next monthly delivery ships in order to cancel the subscription).

Defendant's Memorandum does not squarely address Plaintiff's allegation about the full cancellation policy not being in visual proximity to the request for consent to the offer.  Rather, it sidesteps that precise issue.

Defendant's post-transaction disclosures are just as flawed as its pre-transaction disclosures insofar as Defendant has failed to disclose its full cancellation policy within its post-transaction acknowledgment provided to consumers including Plaintiff.  For example, on May 15, 2017, Plaintiff received an order confirmation email from Defendant, as depicted on pages 8-9 of the Complaint, which omitted addressing the full cancellation policy contained in Defendant's "Terms of Offer".  Similarly, Plaintiff also received, one day later on May 16, 2017, a second email message from Defendant

indicating that Plaintiff's order had been shipped and was on its way, as depicted on pages 10-11 of the Complaint.[14]   That second email, like the first one, omitted addressing the full cancellation policy contained in Defendant's "Terms of Offer" in violation of section 17602(a)(3) of California's Business and Professions Code.

Although Defendant asserts that a "physical receipt" accompanied the shipped items delivered to Plaintiff, which "describes the *entirety* of the automatic renewal program terms and conditions," (Mtn. Dism. at 3:22-24, 14:16-17) (emphasis added), this is simply false.  The "entirety" of the subscription's terms and conditions were not identified in such "physical receipt".  (Def.'s Request for Judicial Notice Ex. A.)  In particular, like the two post-transaction emails mentioned above, the "physical receipt" failed to disclose the full cancellation policy contained in Defendant's "Terms of Offer" in violation of section 17602(a)(3) of California's Business and Professions Code.

Paragraph 21 of the Complaint alleges, "Furthermore, and in addition to the above, after Plaintiff and Class Members subscribed to one of Defendant's subscription plans, Defendant sent to Plaintiff and Class Members email follow-ups to their purchases that failed, and continue to fail, to provide an acknowledgement that includes the automatic renewal or continuous service offer terms and *cancellation policy* in violation of Cal. Bus. & Prof. Code § 17602(a)(3).  Additionally, a purchase confirmation contains language regarding cancellation like that on the website, including the telephone number, but also *does not specify that that number must be called at least one day prior to the date the subscriber's next monthly delivery ships*."  (Compl. ¶ 21) (emphasis added).  Thus, the Complaint's allegations in paragraph 21 plausibly allege a violation of § 17602(a)(3).

---

[14] Defendant's contention that on pages 8-11 of the Complaint, "Plaintiff . . . includes *four* separate communications whereby Defendant transmits information regarding Plaintiff['s] purchase," (Mtn. Dism. at 3:20-21) (emphasis added), is wrong.  Defense counsel surely could have figured out that the images depicted on pages 8-11 of the Complaint originate from only two email messages had they checked with their client, Defendant.  Thus, if anything, this illustrates that the instant Motion has glaring factual errors attributable to poor communication between defense counsel and Defendant.

### 3.   Defendant Has Failed to Show that It Should Prevail as to Its "Good Faith" Affirmative Defense as a Matter of Law.

Defendant argues that it is subject to a "good faith" safe harbor set forth in Bus. & Prof. Code § 17604(b).  (Mtn. Dism. at 15:5-16:7.)

It is a "familiar" and "longstanding" legal principle that " '[w]hen a proviso ... carves an exception out of the body of a statute or contract those who set up such exception must prove it.' "   *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12, 26 (2010) (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008)).  Thus, it is Defendant's burden to show that it falls within the "good faith" statutory exception of section 17604(b).  *See Simpson Strong-Tie*, 49 Cal. 4th at 26.  Defendant has failed to meet its burden.  Failing to disclose its full cancellation policy in "visual proximity" to the "request for consent to the offer" in compliance with the ARL does not constitute "good faith".  Defendant also fails to provide a single case authority in support of its position that its conduct should be exempted from ARL liability ***as a matter of law***.

### 4.   The ARL Contains No Reliance Requirement.

Defendant argues that Plaintiff could not have been "confused or deceived" about the subscription that he purchased.  (Mtn. Dism. at 15:26-27.)  Defendant ignores, however, that the ARL does not impose any reliance requirement upon the California consumer whose ARL rights were violated.

### D.   The Complaint, Which Does Not Sound in Fraud, Adequately Alleges Causation for Purposes of the UCL.

Actual reliance is not required to plead Plaintiff's UCL claim, which does not sound in fraud.  *Code 42 Software*, 2016 WL 7647691, at *8 ("Given that Kissel's claims do not sound in fraud, we similarly decline to require reliance as to her allegations of causation.") ("Following *Tobacco II Cases* and *Kwikset*, courts have used a relaxed causation standard where a UCL claim does not sound in fraud.") (citing *Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2015 WL 1503429, at *10 (N.D. Cal. Apr. 1, 2015) (declining to require reliance for a UCL claim that does not sound in

fraud); *Backus v. General Mills, Inc.*, 122 F. Supp. 3d 909, 925-26 (N.D. Cal. 2015) (same)).  "Allegations that a consumer was actually harmed by a business dealing with a defendant are therefore generally sufficient in cases not involving fraud or misrepresentation." *Backus v. General Mills, Inc.*, 122 F. Supp. 3d 909, 925 (N.D. Cal. 2015); *Svenson v. Google Inc.*, No. 13-cv-04080-BLF, 2015 WL 1503429, at *10 (N.D. Cal. Apr. 1, 2015) ("The Court is not persuaded by Google's characterization of [plaintiff's] UCL claim.  Her unlawful prong claim alleges in a straightforward manner that Google violated its own privacy policies in violation of California Business and Professions Code § 22576.  No reliance is required for a violation of § 22576."); *Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *6 n.3 (N.D. Cal. 2013) ("*no reliance* is required to prove violations of the UCL based on "unlawful" or "unfair" conduct.") (emphasis in original); *Aho v. AmeriCredit Financial Servs., Inc.*, 277 F.R.D. 609, 623 (S.D. Cal. 2011) ("The claim at issue here, that Defendant has engaged in unlawful conduct under the UCL, does not require reliance.").

As explained by the California Supreme Court, "The 'concept of reliance . . . has no application' in suits involving 'many types of unfair business practices.'"  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 n.17 (2009); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317, 326 n.9 (2011) ("As in *In re Tobacco II Cases*, at page 325, footnote 17, we need express no views concerning the proper construction of the cause requirement in other types of cases.").

In *Medrazo v. Honda of North Hollywood*, 205 Cal. App. 4th 1 (2012), the Court of Appeal held that in *In re Tobacco II Cases*, "the Supreme Court also explained that an actual reliance requirement does not apply to UCL actions that are not based upon a fraud theory.  (*Id.* at p. 325, fn. 17, 93 Cal. Rptr. 3d 559, 207 P.3d 20).  In those actions, the plaintiff must simply show that the alleged violation caused or resulted in the loss of money or property."  *Medrazo*, 205 Cal. App. 4th at 12; *see also In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 159 (2010) (distinguishing a case that denied class certification based on the individual factual issues regarding class members' reliance on

alleged misrepresentations as "irrelevant" "where the UCL claim is based upon the unlawful prong of the UCL" which "presents no issue regarding reliance"); *Lewis v. Robinson Ford Sales, Inc.*, 156 Cal. App. 4th 359, 370 (2007) ("Plaintiff's theory is that the mandatory disclosures required by the ASFA regarding the purchase price of the subject vehicle are analogous to a strict liability provision, and individualized proof of reliance . . . is therefore not required for liability. . . . These chief allegations are properly amenable to class treatment . . . . Likewise, any related UCL allegations are not dependent on a finding of separate instances of fraud, because the business transactions here could still qualify as unlawful . . . through any proven violations of the ASFA.").

"The 'actual reliance' requirement applies only to UCL actions 'based on a fraud theory involving false advertising and misrepresentations to consumers.'" *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 663 n.5 (D. Kan. Apr. 5, 2013) (citing *In re Tobacco II Cases*, 46 Cal. 4th at 326 n.17 and *Medrazo*, 205 Cal. App. 4th at 12); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("fraud is not an essential element of the California statutes on which he relies"). The Complaint here does not allege that Defendant engaged in fraudulent conduct.

### 1.   Defendant Misapprehends the Effect of Proposition 64.

Defendant's thinly-veiled reference to Proposition 64, which amended the UCL in 2004, is misleading, as such amendment was not intended to curb suits by those who had had business dealings with a given defendant. That is precisely what the California Supreme Court held in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317, 335 n.21 (2011):

> "We conclude Proposition 64 should be read in light of its apparent purposes, i.e., to eliminate standing for those who have not engaged in ***any business dealings*** with would-be defendants and thereby strip such unaffected parties of the ability to file 'shakedown lawsuits,' while preserving for actual victims of deception ***and other acts of unfair competition the ability to sue and enjoin such practices***. (Voter Information Guide, Gen. Elec. (Nov. 2, 2004) argument in favor of Prop. 64, p. 40; see also Prop. 64, § 1.)"

*Kwikset Corp.*, 51 Cal. 4th at 317 (emphasis added). In *Robinson v. U-Haul Co. of Cal.*, 4 Cal. App. 5th 304, 317 n.6 (2016), the Court of Appeal explained:

"Before 2004, the UCL allowed 'any person acting for the interests of itself, its members or the general public' to seek restitution or injunctive relief against unfair business acts or practices. (Former § 17204, added by Stats. 1977, ch. 299, § 1, p. 1202.)  This relaxed standard had been subject to abuse. (*Amalgamated Transit*, *supra*, 46 Cal.4th at p. 1000, 95 Cal.Rptr.3d 605, 209 P.3d 937.) 'Proposition 64's Findings and Declarations of Purpose (Voter Information Guide, Gen. Elec. (Nov. 2, 2004) p. 109) expressed concern that the UCL and false advertising law were being 'misused by some private attorneys' (Prop. 64, § 1, subd. (b)) to file suits on behalf of 'clients who [had] not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant' (*id*. subd. (b)(3)) and had not 'been injured in fact' (*id*. subd. (b)(2)) as a way of 'generating attorney's fees without creating a corresponding public benefit' (*id*. subd. (b)(1)).  In short, voters focused on curbing shakedown suits by parties who had never engaged in *any* transactions with would-be defendants.  [Citation.]  ***No corresponding concern was expressed about suits by those who had had business dealings with a given defendant***....'"

*Robinson v. U-Haul Co. of Cal.*, 4 Cal. App. 5th 304, 317 n.6 (2016) (quoting *Kwikset Corp.*, 51 Cal. 4th at 335 n.21) (emphasis added).  "Thus, '[w]hile Proposition 64 clearly was intended to abolish the portions of the UCL ... that made suing under them *easier* than under other comparable statutory and common law torts, it was not intended to make their standing requirements comparatively *more* onerous.'"  *Robinson*, 4 Cal. App. 5th at 317 n.6 (quoting *Kwikset Corp.*, 51 Cal. 4th at 335 n.21) (emphasis in original).

### 2.    The Complaint Alleges that Plaintiff Suffered an Economic Injury.

Defendant appears to challenge whether the Complaint alleges an "economic injury."  (Mtn. Dism. at 17:16-17.)  Not so.  "Notably, lost money or property— economic injury—is itself a classic form of injury in fact."  *Kwikset*, 51 Cal. 4th at 323.  "An injury to a tangible property interest, such as money, generally satisfies the 'injury in fact' element for standing."  *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1346 (2009).  The Complaint sufficiently alleges that Plaintiff lost money.  (Compl. ¶ 50.)

1

Dated:  January 12, 2018                    PACIFIC TRIAL ATTORNEYS, P.C.

2

3                                                            By: _/s/ Scott J. Ferrell_____
                                                             Scott J. Ferrell
4                                                            Attorney for Plaintiff

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEM ISO RESPONSE TO MTN TO DISMISS                                            17cv01888-MMA-KSC

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2018, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

 */s/ Scott J. Ferrell*         
Scott J. Ferrell