# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

MATTHEW LOPEZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

STAGES OF BEAUTY, LLC, and DOES 1-10,

Defendants.

Case No.: 17cv1888-MMA (KSC)

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE COMPLAINT; AND**

[Doc. No. 4]

**(2) DENYING DEFENDANT'S MOTION FOR SANCTIONS**

[Doc. No. 7]

On September 14, 2017, Plaintiff Matthew Lopez ("Plaintiff"), individually and on behalf of all others similarly situated, filed this putative class action against Defendant Stages of Beauty, LLC ("Defendant") and Doe Defendants 1 through 10 alleging causes of action for violations of California's Automatic Renewal Law ("ARL"), California Business and Professions Code § 17600, *et seq.* and California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.* Doc. No. 1 ("Compl."). Defendant filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Doc. No. 4-1 ("MTD"). Also, Defendant filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. Doc. No. 7-1 ("Sanct. Mtn."). Plaintiff opposes both motions [Doc. No. 8 ("MTD Oppo."), Doc. No. 9 ("Sanct. Oppo.")], and Defendant replied [Doc. No. 10 ("MTD

Reply"), Doc. No. 11 ("Sanct. Reply")]. The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 12. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss [Doc. No. 4] and **DENIES** Defendant's motion for sanctions [Doc. No. 7].

## BACKGROUND[1]

Defendant sells cosmetics, beauty aids and related products primarily through a website which markets weekly subscription programs. Compl., ¶¶ 8, 17. These subscription programs "constitute[] . . . automatic renewal and/or continuous service plan[s] or arrangement[s] . . . ." Compl., ¶ 17. Plaintiff purchased a subscription plan from Defendant and seeks to represent a class of "[a]ll persons within California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased any product or service in response to an offer constituting an "Automatic Renewal" as defined by [California Business and Professions Code] § 17601(a) from Stages of Beauty, LLC, its predecessors, or its affiliates." Compl., ¶¶ 7, 22.

Plaintiff alleges that Defendant's automatic renewal or continuous service offers failed to present the offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer prior to purchasing the subscription and that Defendant charged Plaintiff's and class members' credit or debit cards, or third-party accounts, without first obtaining the subscriber's consent to the agreement containing the offer terms. Compl., ¶ 2. Specifically, Plaintiff alleges the full and complete cancellation policy is not listed on the webpage inviting a prospective subscriber to complete a purchase. Compl., ¶ 18.

---

[1] Because this matter is partially before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

Plaintiff also alleges that Defendant failed to provide an acknowledgement including the full cancellation policy. Compl., ¶ 2. After subscribing to one of Defendant's plans, Defendant sends a "follow-up[]" email to the subscriber. *See* Compl., ¶ 21. Plaintiff alleges that these emails provide language regarding cancellation without specifying that a subscriber must call the cancellation number "at least one day prior to the date the subscriber's next monthly delivery ships." *Id.* According to Plaintiff, Defendant's webpage also references "cancellation and gives a phone number for cancellation," but "does not specify, as do terms set forth later in the website, that that number must be called at least one day prior to the date the subscriber's next monthly delivery ships, and thus does not contain a full description of the cancellation policy in visual proximity to the request for consent to the offer . . . ." Compl., ¶ 18.

As a result, Plaintiff alleges "all goods, wares, merchandise, or products, sent to Plaintiff and Class Members under the automatic renewal or continuous service agreement are deemed to be an unconditional gift . . . ." Compl., ¶ 20. Based on these allegations, Plaintiff raises the following causes of action: (1) failure to present the automatic renewal or continuous service offer terms clearly and conspicuously and in visual proximity to the request for consent offer in violation of the ARL; (2) failure to obtain the consumer's affirmative consent before the subscription is fulfilled in violation of the ARL; (3) failure to provide an acknowledgement with the automatic renewal terms and information regarding the cancellation policy in violation of the ARL; and (4) violations of California's UCL for unlawful and/or unfair business practices. Compl., ¶¶ 32-53.

## MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's Complaint on four grounds. *See* MTD at 7. First, Defendant argues Plaintiff lacks Article III standing with respect to his ARL claims. *Id.* Second, Defendant asserts the ARL does not provide a private right of action. *Id.* Third, Defendant contends its pre- and post-transaction disclosures comply with the

ARL.  *Id.*  Fourth, Defendant states that Plaintiff lacks statutory standing and insufficiently pleads a UCL claim.  *Id.* at 8.  Plaintiff opposes dismissal.  MTD Oppo.

## 1.   *Request for Judicial Notice*

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts.  *See United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *Id.* at 908; *see also* Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).  Courts can take judicial notice of facts that are not subject to reasonable dispute because they are either generally known or can be readily determined by reference to sources whose accuracy cannot be reasonably questioned.  Fed. R. Evid. 201(b).  A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Ritchie*, 342 F.3d at 908 (internal citations omitted).  In other words, a court "may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds in Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

In support of its motion to dismiss, Defendant requests the Court judicially notice Plaintiff's receipt that was sent with his purchase on or about June 2, 2017.  Doc. No. 4-2, Request for Judicial Notice In Support of Defendant Stages of Beauty, LLC's Motion to Dismiss the Complaint ("DRJN") at 3.  Defendant contends judicial notice is appropriate because Plaintiff's claim is based on Defendant's alleged failure to provide a post-transaction acknowledgment of its automatic renewal policy terms, but Plaintiff

4

deliberately omits the receipt he received for the product.  *Id.* at 3-4.  Because Plaintiff's Complaint does partially rely upon the claim that Defendant's post-transaction acknowledgment of the renewal policy terms are insufficient and because Plaintiff does not object, the Court **GRANTS** Defendant's request to judicially notice Exhibit A. DRJN, Exhibit A.

Additionally, Plaintiff requests the Court judicially notice documents of the ARL's legislative history, and the first amended complaint and the PACER docket sheet in *Kissel v. Omega Natural Science, Inc.*, No. CV 16-27700-GW (SKx).  Doc. No. 8-1, Plaintiff's Request for Judicial Notice in Support of Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss the Complaint ("PRJN") at 2-3.  Judicial notice of legislative history materials is proper pursuant to Federal Rule of Evidence 201(b).  *See Aramark Facility Servs. v. SEIU, Local 1877*, 530 F.3d 817, 826 n.4 (9th Cir. 2008); *Zephyr v. Saxon Mortg. Servs.*, 873 F. Supp. 2d 1223, 1226 (E.D. Cal. 2012).  Additionally, the Court may judicially notice matters of public record, including pleadings, orders, and other papers filed with the court, or materials from a proceeding in another tribunal.  *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986); *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 n.5 (9th Cir. 1995), *reversed on other grounds*, 520 U.S. 548 (1997).  Accordingly, the Court **GRANTS** Plaintiff's request to judicially notice Exhibits 1 through 8.  PRJN, Exhibits 1-8.

## 2. *Legal Standard*

### a. *Rule 12(b)(6)*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual

enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and alterations omitted). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

### b.     *Rule 12(b)(1)*

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "If the challenge to jurisdiction is a facial attack . . . the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F. Supp. 2d 1158, 1167 (E.D. Cal. 2012) (internal citation and quotation omitted). "Lack of standing is a defect in subject-matter jurisdiction and may be properly challenged under Rule 12(b)(1)." *Wright v. Incline Vill. Gen. Imp. Dist.*, 597 F. Supp. 2d 1191, 1199 (D. Nev. 2009) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

*3.*     <u>*Analysis*</u>

In addressing Defendant's arguments, the Court analyzes only whether the ARL creates a private right of action, whether Plaintiff has standing to bring a UCL claim, and whether Plaintiff has sufficiently alleged a UCL claim to survive a Rule 12(b)(6) motion to dismiss.

    *a.*     *Plaintiff's ARL Causes of Action*

Defendant contends that no private right of action exists under the ARL. MTD at 13-16. In support, Defendant asserts that the plain language of the ARL and the legislative history do not permit a private right of action. *Id.* Plaintiff opposes, contending that the ARL does in fact create a private right of action. MTD Oppo. at 14-24.

"Whether a *statute* gives rise to a private right of action is a question of legislative intent." *County of San Diego v. State of California*, 164 Cal. App. 4th 580, 609 (Cal. Ct. App. 2008) (citation omitted) (emphasis in original); *see also Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 596 (Cal. 2010) (stating that whether there is a private right of action depends on whether the Legislature "'manifested an intent to create such a private cause of action' under the statute") (citing *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal. 3d 287, 305 (Cal. 1988). "Such legislative intent, if any, is revealed through the language of the statute and its legislative history." *Lu*, 50 Cal. 4th at 596 (citing *Moradi-Shalal*, 46 Cal. 3d at 294-95). For example, "[a] statute may refer to a remedy or means of enforcing its substantive provisions, i.e., by way of an action." *Id.* at 597. If the statute does not contain "'clear, understandable, unmistakable terms,' which strongly and directly indicate that the Legislature intended to create a private cause of action," the courts "resort to [the statute's] legislative history." *Id.* (citations omitted).

Plaintiff's first three causes of action are based upon California's Business and Professions Code §§ 17602(a)(1)-(3) and 17603. Compl., ¶¶ 32-46. Section 17602(a) provides:

(a)  It shall be unlawful for any business that makes an automatic renewal or continuous service offer to a consumer in this state to do any of the following:

> (1)  Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer.

> (2)  Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms.

> (3)  Fail to provide an acknowledgement that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the offer includes a free trial, the business shall also disclose in the acknowledgement how to cancel, and allow the consumer to cancel, before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a).  Based on the foregoing language, there is no express provision authorizing a private right of action in § 17602.  However, Plaintiff asserts that § 17603 creates a private right of action because it contains language that the consumer is allowed to keep the product sent to him as an unconditional gift.  MTD Oppo. at 14-15.  Section 17603 provides:

> In any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent as described in Section 17602, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business, including, but not limited to, bearing the cost of, or responsibility for, shipping any goods, wares, merchandise, or products to the business.

Cal. Bus. & Prof. Code § 17603. Based on the language of § 17603, the Court is not persuaded that the term "unconditional gift" provides "clear, understandable, unmistakable terms" strongly and directly indicating that the Legislature intended to create a private right of action. *Lu*, 50 Cal. 4th at 597.

Plaintiff further contends that a private right of action exists under the ARL pursuant to California Business and Professions Code §§ 17535 and 17604(a). MTD Oppo. at 15-17. "The sole reference to remedies [in the ARL] is contained within § 17604(a), which states that '[n]otwithstanding Section 17534, a violation of this article shall not be a crime. However, all available civil remedies that apply to a violation of this article may be employed." *Johnson v. Pluralsight, LLC*, 236 F. Supp. 3d 1176, 1180-81 (E.D. Cal. 2017), *appeal docketed*, No. 17-15374 (9th Cir. 2017) (citing Cal. Bus. & Prof. Code § 17604(a)). Section 17535, in relevant part, states:

> Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate *this chapter* may be enjoined by any court of competent jurisdiction. The Court may make such orders or judgments . . . which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful.
>
> Actions for injunction under *this section* may be prosecuted by . . . any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter.

Cal. Bus. & Prof. Code § 17535 (emphasis added). Plaintiff contends that reference to "this chapter" permits consumers to seek injunctive relief and restitution via § 17535 because "the California Legislature intentionally placed the ARL within the same chapter." MTD Oppo. at 16. Further, Plaintiff argues that Defendant's reliance on § 17604(a) "ignores the fact that the California Legislature exempted any criminal liability for ARL violations . . . but allowed all other provisions including civil remedies (including 17535) for violations of the ARL to apply." *Id.* Defendant contends that § 17604(a) contemplates other existing civil remedies, like the UCL. MTD at 13-14.

Plaintiff's argument "misse[s] a crucial distinction between the existence of a private right to *enforce* [the ARL] (such as under the UCL, [False Advertising Law], and/or § 17535), and the existence of an independent *cause of action* under [the ARL] itself." *Johnson*, 236 F. Supp. 3d at 1181-82 (emphasis added). Section 17535 "explicitly authorizes a private right of action by 'any person' for violations of [Chapter 1 of California's Business and Professions Code, which includes the ARL]." *Id.* at 1181. However, by stating actions "*under this section* may be prosecuted by . . . any person who has suffered injury in fact, " the California Legislature clarified its intent "that such a cause of action be pursued under § 17535 itself" and not the ARL. *See* Cal. Bus. & Prof. Code § 17535; *see also Johnson*, 236 F. Supp. 3d at 1181.

Accordingly, the Court finds that the ARL does not contain "clear, understandable, unmistakable terms" strongly and directly indicating that the California Legislature intended to create a private cause of action under the ARL. *Lu*, 50 Cal. 4th at 597 (citations omitted). Thus, the Court looks to the legislative history to determine whether the ARL creates a private right of action. *Id.*

Defendant contends that Senate Bill 340, which became the ARL, is illustrative of the California Legislature's intent with respect to civil remedies available under the ARL. MTD at 15. The Senate Judiciary Committee bill analysis states, in relevant part:

> Senate Bill 340 would provide that a violation of its provisions would not be a crime, but all applicable civil remedies would be available.
>
> Under the [False Advertising Act], any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. Under the UCL, a private party may bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party. However, the party must have suffered an injury in fact and lost money or property.

MTD at 15 (citing *Johnson*, 236 F. Supp. 3d at 1182). Plaintiff asserts that this quotation cannot be used to interpret the California Legislature's intent because it "was issued prior

to the key amendment (including for the first time an 'unconditional gift' provision) to SB 340." MTD Oppo. at 17. However, the Assembly Committee on Judiciary bill analysis, which the Court judicially notices at Plaintiff's request, recognizes that the ARL would include a provision deeming goods, wares, merchandise, or products sent to a consumer under a continuous service or automatic renewal in violation of the ARL as an unconditional gift. PRJN, Exhibit 6 at 3. The analysis also provides that "all civil remedies that apply to a violation may be employed," and lists "existing law," including the following California Business & Professions Code sections: § 17200, e*t seq.* (the UCL), § 17500, § 17534, § 17536, § 17204, § 17203, and § 17206. *Id.* at 3-4. Thus, the committees' bill analyses specifically contemplate that consumers who suffered an injury by violations of the ARL can seek relief under other statutory provisions, including the UCL. *See id.* These analyses, in conjunction with § 17604(a), "strongly support[] a Legislative intent to pursue causes of action for violations of [the ARL] under existing laws." *See Johnson*, 236 F. Supp. 3d at 1182. Accordingly, the Court finds that the ARL does not create a private right of action.[2] Therefore, Plaintiff cannot bring causes of

_____

[2] Recent federal district courts and state superior courts also support a finding that a private right of action does not exist under the ARL. *Johnson*, 236 F. Supp. 3d at 1182 n.9; *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2017 WL 3021037, at *5-6 (N.D. Cal. July 17, 2017) (granting the defendant's motion for summary judgment and finding the ARL does not create a private right of action); *Roz v. Nestle Waters N. Am., Inc.*, No. 2:16-cv-04418-SVW-JEM, 2017 U.S. Dist. LEXIS 5177, at *10-16 (C.D. Cal. Jan. 11, 2017) (finding the ARL does not create a private right of action and granting the defendant's motion to dismiss the ARL claims); *Siciliano v. Apple, Inc.*, No. 1:13-cv-257676, 2016 Cal. Super. LEXIS 1099, at *7-14 (Cal. Super. Ct. May 16, 2016) (stating the ARL creates a private right of action pursuant only to § 17604, not §§ 17602-17603 and granting the defendant's motion for judgment on the pleadings without leave to amend); *Mayron v. Google, Inc.*, No. 1-15-cv-275940, 2016 Cal. Super. LEXIS 173, at *4-9 (Cal. Super. Ct. Feb. 26, 2016) (stating that §§ 17602 and 17603 of the ARL do not create a private right of action and sustaining the defendant's demurrer as to the plaintiff's ARL claims without leave to amend). The Court notes that some courts have found the ARL does create a private right of action. *See Kissel v. Code42 Software, Inc.*, No. 8:15-cv-01936-JLS-KES, 2016 WL 7647691, at *6-7 (C.D. Cal. Apr. 14, 2016); *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 126 (D. Conn. 2014); *Noll v. eBay, Inc.*, No. 5:11-cv-04585-EJD, 2013 WL 2384250, at *6 (N.D. Cal. May 30, 2013); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 600 (N.D. Cal. 2015). However, the Court disagrees with each of these cases. For example, *Kissel* failed to distinguish between the existence of a private right to enforce the ARL through existing law, like the UCL, and the existence of an independent cause of action under the ARL itself. *See Kissel*, 2016 WL 7647691, at *4. Additionally, *In re Trilegiant Corp.*

17cv1888-MMA (KSC)

action directly under the ARL and Plaintiffs first, second, and third causes of action are **DISMISSED** with prejudice.

### b. Plaintiff's Standing to Bring a UCL Cause of Action

While Defendant acknowledges that private parties may bring claims for violations of the ARL under the UCL, Defendant asserts that Plaintiff cannot meet the standing requirement of the UCL or Article III. MTD at 11-12, 22-24. Specifically, Defendant contends that Plaintiff's allegations do not demonstrate the requisite injury in fact and do not demonstrate that Plaintiff lost money or property as a result of Defendant's alleged conduct. *Id.*

To establish Article III standing, plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Similarly, to proceed with a UCL claim, a plaintiff must plausibly allege facts satisfying a two-pronged test for standing under California statutes: (1) the plaintiff must have suffered an injury in fact; and (2) the plaintiff must have lost money or property as a result of unfair competition. *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 852 (Cal. Ct. App. 2008) (citing Cal. Bus. & Prof. Code § 17204).

To establish injury under the UCL, a plaintiff needs to demonstrate that he lost money or property. *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223,

---

considered whether the provisions of the ARL could be enforced by out-of-state consumers against California businesses and did not directly analyze whether the ARL creates a private right of action. *See In re Trilegiant Corp.*, 11 F. Supp. 3d at 126 (stating that the ARL "only provides a private cause of action for customers who are harmed in California"). Similarly, the *Noll* cases also found that the ARL limited recovery to California consumers without directly analyzing whether the ARL creates a private right of action for California consumers. *Noll*, 2013 WL 2384250, at * 6; *see also Noll*, 309 F.R.D. at 600 (indicating that the court dismissed the plaintiff's automatic renewal/continuous service count pursuant to Cal. Bus. & Prof. Code § 17600 with prejudice, but the plaintiff's amended complaint again included the claim and the court ultimately granted the parties' joint motion to certify the putative class and approve settlement).

227 (Cal. 2006). This requirement is met so long as the plaintiff shows some specific, identifiable trifle or injury. *See Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1347 (Cal. Ct. App. 2009).

Under Article III's injury in fact element, the plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations omitted). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S.Ct. at 1549. However, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.* Accordingly, *Spokeo* distinguishes between "bare procedural violation[s]" and violations that "cause harm or present any material risk of harm." *Id.* at 1549-50.

Defendant argues that Plaintiff lacks standing because "[t]he Complaint alleges merely that Plaintiff purchased a product from Defendant and that he did not receive adequate disclosures under the ARL." MTD at 23. Defendant notes that Plaintiff does not argue that "Plaintiff's failure to receive adequate disclosures caused him to lose money or property that he would have retained had the disclosures been different. Nor does Plaintiff allege that he would have done anything differently had he received a more robust disclosure. Further, Plaintiff does not allege that he wanted or attempted to cancel his automatic renewal program, but was unable to do so." *Id.* Defendant also argues the Court lacks subject matter jurisdiction over this case because Plaintiff lacks Article III standing. MTD at 11-12. Specifically, Defendant contends Plaintiff has not suffered a concrete injury in fact because he has only alleged a technical violation of a statute. *Id.* at 11 (citing *Lujan*, 504 U.S. at 560-61; *Spokeo*, 136 S. Ct. at 1549). Plaintiff counters that his allegations of monetary harm satisfy the injury in fact requirement and here, Plaintiff has lost money due to Defendant's automatic renewal policy that violates the ARL. MTD Oppo. at 10-12.

Plaintiff has properly alleged that he suffered an injury in fact that was caused by Defendant's actions, and therefore meets the standing requirements of the UCL and Article III. Plaintiff has alleged that all products received from Defendant in violation of the ARL constitute unconditional gifts and, therefore, Plaintiff seeks restitution in the amount of the subscription payments. *See* Compl., ¶¶ 16, *Prayer for Relief* ¶ G. Under the UCL, "[t]he court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property . . . acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. The ARL explicitly provides that any products delivered to consumers in violation of the ARL are deemed unconditional gifts to the consumers, who can dispose of them however they choose. Cal. Bus. & Prof. Code § 17603. In other words, when a product is delivered to a consumer in violation of the ARL, it is not considered a product that has been sold, but is considered a gift. Thus, when the Defendant collected money for that gift, it injured Plaintiff. *See Roz*, 2017 U.S. Dist. LEXIS 5177, at *16-25.

### c.  *Plaintiff's UCL Cause of Action*

Plaintiff's fourth and final cause of action alleges that Defendant violated the UCL because it "committed unlawful and/or unfair business acts or practices . . . by violating Cal. Bus. & Prof. Code §§ 17602(a)(1), 17602(a)(2), and 17602(a)(3)." Compl., ¶49. Defendant asserts that Plaintiff's UCL claim fails as a matter of law because Defendant's "conduct was neither unlawful nor unfair." MTD at 22.

The UCL "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999) (internal quotations omitted). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank*, 691 F.3d 1152, 1168 (9th Cir. 2012).

Under the unlawful prong, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently

actionable." *Cel-Tech.*, 20 Cal. 4th at 180 (internal quotations omitted). A plaintiff who "cannot state a claim under the 'borrowed' law . . . cannot state a UCL claim either." *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1206 (E.D. Cal. 2013) (quoting *Rubio v. Capital One Bank*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008), *affirmed in part, reversed in part*, 613 F.3d 1195 (2010)).

Under the unfair prong, courts have held that "the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to a specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256 (Cal. Ct. App. 2010); *see Cel-Tech*, 20 Cal. 4th at 186-87 (requiring funding of unfairness under UCL be tethered to legislatively declared policy).

Plaintiff's UCL claim is premised on Defendant's alleged violations of the ARL. *See* Compl., ¶¶ 47-53. Thus, Defendant argues that Plaintiff does not sufficiently allege a violation of the ARL, and therefore, the UCL claim must be dismissed under both the unlawful and unfair prongs. MTD at 24-25.

"The purpose of the ARL is to protect consumers from unwittingly consenting to automatic renewals or subscription orders." *Price v. Synapse Grp., Inc.*, No. 16-cv-01524-BAS-BLM, 2017 WL 3131700, at *5 (S.D. Cal. July 24, 2017) (citing Cal. Bus. & Prof. Code § 17600). Thus, the statute makes it unlawful for any business making an automatic renewal offer to consumers in California to do any of the following:

> (1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer.

> (2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms.

15

(3) Fail to provide an acknowledgement that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the business shall also disclose in the acknowledgement how to cancel, and allow the consumer to cancel, before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

Defendant asserts that Plaintiff's Complaint evinces that Defendant provided the required terms of the automatic renewal offer. MTD at 17. The "automatic renewal offer terms" that must be disclosed in a clear and conspicuous manner include "[t]he description of the cancellation policy that applies to the offer." Cal. Bus. & Prof. Code § 17601(b)(2). Defendant contends that it satisfies the cancellation policy requirement by notifying the subscriber to "call the phone number provided to cancel." MTD at 18. Plaintiff attaches a picture of the webpage where a prospective subscriber is invited to complete a purchase to his Complaint and alleges that it indicates that Defendant's full cancellation policy is not in visual proximity to the request for the consent to the offer. Compl., ¶ 18. Specifically, Plaintiff alleges that "although the page references cancellation and gives a phone number for cancellation, it does not specify, as do terms set forth later in the website, that number must be called at least one day prior to the date the subscriber's next monthly delivery ships, and thus does not contain a full description of the cancellation policy . . . ." *Id.* Defendant contends that it discloses "the full cancellation policy." MTD Reply at 12. A review of the attached webpage reveals that the only information regarding cancellation is that the subscriber is instructed to call a particular phone number. *See* Compl., ¶18. The webpage does not include information instructing the subscriber that they must call that phone number at least one day prior to the date the next monthly delivery ships. *See id.* Accordingly, Plaintiff sufficiently alleges that Defendant's "description of the cancellation policy that applies to the offer" is incomplete, and therefore, it is plausible that the incomplete cancellation policy violates the ARL. *See* Cal. Bus. & Prof. Code § 17601(b)((2).

Additionally, Defendant argues it complied with the ARL's post-transaction requirement that it provide an acknowledgement including "the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer."  MTD at 20 (citing Cal. Bus. & Prof. Code § 17602(a)(3)).  Plaintiff counters that the post-transaction acknowledgement omits Defendant's full cancellation policy because it does not contain information that the phone number provided for cancellations must be called at least one day prior to the date the subscription's next monthly delivery ships.  MTD Oppo. at 29; Compl., ¶ 21.  Plaintiff attaches the order confirmation and shipping confirmation emails to the Complaint.  Compl., ¶ 21.  Neither email includes cancellation information.  *See id.*  Defendant asserts that it did provide the full terms in the physical receipt shipped with the product.  MTD at 20; *see also* DRJN, Exhibit A.  The physical receipt shipped with the product provides a summary of the offer terms.  DRJN, Exhibit A at 9.  The summary states:

> Try our free sample of Adaptive Tripeptide Serum to discover the incredible benefits.  You pay on $4.99 for shipping and handling of the sample and have no obligation to buy anything in the future, as long as you call to cancel within 18 days of placing your order.  Even if you cancel during the free-trial period, the product(s) are yours to keep and you will not be charged anything other than what you have already paid.  No commitments, no hassles.  If you do not call . . . to cancel within 18 days of ordering your free sample, you will be enrolled in our Adaptive Tripeptide Serum VIP Membership Program.  As a member, you will be sent a one-month supply of Adaptive Tripeptide Serum 18 days from the date of your free-sample order, and every 30 days thereafter, for just $79.99 plus $4.99 shipping and handling and applicable sales tax.  Call to change the shipping frequency or cancel at any time without penalty.  If, at any point, you return the product(s) to us, it is your responsibility to pay for return shipping and handling.  Please reference our refund and return policy if you have any questions.

*Id.*  This summary does not include the full cancellation policy as alleged by Plaintiff, and specifically does not include the requirement that, in order to cancel, the phone

number provided must be called at least one day prior to the date the subscriber's next monthly delivery ships. *See id.*; *see also* Compl., ¶ 21.

Based on Plaintiff's allegations, it is plausible that Defendant's failure to provide the complete cancellation policy (namely, the timeframe in which a subscriber must cancel), violates the ARL's requirement that "[t]he description of the cancellation policy" be disclosed in a clear and conspicuous manner.[3] *See* Cal. Bus. & Prof. Code §§ 17601(b)(2), 17602(a)(1)-(3).

Defendant asserts that, even if it did not comply with the ARL, it is entitled to protection pursuant to California Business and Professions Code § 17604(b), which provides that "[i]f a business complies with the provisions of this article in good faith, it shall not be subject to civil remedies." Cal. Bus. & Prof. Code § 17604(b); MTD at 21. This safe harbor, if successfully proven, is an absolute bar to Plaintiff's recovery on the UCL cause of action. *Cel-Tech*, 20 Cal. 4th at 188 (good faith sales allowed under statute cannot be unfair or unlawful under the UCL).

Defendant contends it acted in good faith with the ARL because its "extensive disclosures tell customers exactly how and when they will be billed for an order and how they can cancel their subscriptions. This information is conspicuously presented in multiple places on Defendant's website and throughout the purchase process." MTD at

---

[3] Defendant also contends the terms of Defendant's automatic renewal policy were disclosed in a clear and conspicuous manner and in visual proximity to the request for consent. MTD at 18-19. Plaintiff does not oppose this contention, and a review of the Complaint evinces that Plaintiff's claim is not predicated on whether the text itself is clear and conspicuous, but rather is based upon the alleged incompleteness of the cancellation policy's content. *See* MTD Oppo.; Compl., ¶¶ 18-19. Additionally, Defendant argues that it obtained Plaintiff's affirmative consent to the terms because he checked a box stating "I understand that unless I cancel within 18 days, I will be sent a one-month supply of Adaptive Tripeptide Serum for just $79.99 + $4.99 S&H and applicable sales tax beginning 18 days from now and every 30 days thereafter." *See* MTD at 19. The Court declines to address these arguments as Plaintiff's claims are predicated on the incompleteness of the cancellation policy, *i.e.*, he did not consent to the full cancellation policy and the full terms were not disclosed in a clear and conspicuous manner and in visual proximity to the request for consent as required by the ARL. *See* Compl., ¶¶ 18-20.

21; MTD Reply at 14.  Plaintiff argues that Defendant has not met its burden of proving that it is protected from civil liability.  MTD Oppo. at 31.

The Court notes that Defendant does not cite to any case law applying the safe harbor provision of the ARL to the UCL in support of its argument that the UCL claim should be dismissed at the pleadings stage.  *See* MTD; MTD Reply.  Further, the Court notes one important discrepancy in Defendant's argument.  Defendant contends that it tells customers "exactly" how they can cancel their subscription.  MTD at 21; MTD Reply at 14.  However, as discussed above, Plaintiff alleges the cancellation terms disclosed do not include language that the phone number provided must be called at least one day prior to delivery of the subscriber's next shipment.  Thus, at this stage of the proceedings, the Court is unpersuaded that Defendant's motion to dismiss Plaintiff's UCL claim should be granted on the basis of § 17604(b)'s safe harbor provision.

Based on the foregoing, Plaintiff plausibly alleges that Defendant's conduct or practices violates the ARL, and therefore, Plaintiff plausibly alleges a UCL claim. Accordingly, Defendant's motion to dismiss Plaintiff's fourth cause of action is **DENIED**.

### 4.  *Conclusion*

In summation, the Court **GRANTS** Defendant's motion with respect to Plaintiff's ARL causes of action and **DISMISSES** with prejudice causes of action one, two, and three.  The Court also **DENIES** Defendant's motion to dismiss Plaintiff's UCL cause of action.

MOTION FOR SANCTIONS

Defendant moves the Court for sanctions pursuant to Federal Rule of Civil Procedure 11 because "Plaintiff's Complaint is clearly frivolous, and objectively legally and factually baseless."  Sanct. Reply at 4; *see also* Sanct. Mtn.  Plaintiff opposes.  Sanct. Oppo. at 31-33.

Federal Rule of Civil Procedure 11 provides in pertinent part, that when an attorney presents a signed paper to a court that attorney is certifying that to the best of his

or her "knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). When one party seeks sanctions against another, a court must first determine whether any provision of Rule 11(b) has been violated. *Warren v. Guelker*, 29 F.3d 1386, 1389 (9th Cir. 1994). A finding of subjective bad faith is not required under Rule 11. *See Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994) ("Counsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head."). "Instead, the question is whether, at the time the paper was presented to the Court (or later defended) it lacked evidentiary support or contained 'frivolous' legal arguments." *Odish v. CACH, LLC*, No. 12cv1710-AJB (DHB), 2012 WL 5382260, at *3 (S.D. Cal. Nov. 1, 2012). If the court determines a Rule 11 violation occurred, "the court *may* impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added).

Defendant contends that Plaintiff's counsel violated Rule 11(b)(2) because the allegations in the Complaint are "objectively legally baseless" and have "no chance of success." Sanct. Mtn. at 12. In support, Defendant reiterates its arguments in seeking dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). *Id.* at 12-20. Plaintiff counters that the ARL and UCL causes of action are not legally baseless. Sanct. Oppo. at 15-17.

As an initial matter, the Court finds that Plaintiff's UCL cause of action is not legally baseless because, as discussed above, the Court denies Defendant's motion to dismiss the UCL claim. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures, Indus.*, 508 U.S. 49, 60 (1993) (stating that a claim is typically not considered "baseless" unless "no reasonable litigant could realistically expect success on the merits"). With respect to Plaintiff's ARL causes of action, the Court notes that Plaintiff cited to case law suggesting that the ARL creates a private right of action in his oppositions to Defendant's

motion to dismiss and motion for sanctions. *See* MTD Oppo. at 14; Sanct. Oppo. at 16; *see also Kissel*, 2016 WL 7647691, at *6-7; *In re Trilegiant Corp.*, 11 F. Supp. 3d at126; *Noll*, 2013 WL 238425, at *6; *Noll*, 309 F.R.D. at 600 (N.D. Cal. 2015). "A claim is not objectively baseless as long as there is '*some* plausible basis' for the argument, even if that basis is 'quite a weak one.'" *Simpson v. Cal. Pizza Kitchen, Inc.*, No. 13-cv-164-JLS (JMA), 2013 WL 12114487, at *3 (S.D. Cal. Oct. 23, 2013) (citing *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001) (emphasis in original). Although the Court disagrees with the outcome of the case law cited by Plaintiff, those cases protect Plaintiff's claims from being "objectively baseless." Further, the Court finds that Plaintiff plausibly alleges Defendant was noncompliant with the ARL, meaning that if the Court found the ARL created a private right of action, those claims would have survived dismissal. Accordingly, the Court **DENIES** Defendant's motion for sanctions.[4]

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss. Specifically, the Court **GRANTS** Defendant's motion and **DISMISSES** with prejudice Plaintiff's first, second and third causes of action under the ARL and **DENIES** Defendant's motion to dismiss Plaintiff's fourth cause of action under the UCL. Additionally, the Court **DENIES** Defendant's motion for sanctions.

**IT IS SO ORDERED**.

Dated: February 9, 2018

Hon. Michael M. Anello
United States District Judge

---

[4] Plaintiff requests that the Court award him attorneys' fees and costs incurred in opposing Defendant's motion for sanctions. Sanct. Oppo. at 31. The Court **DENIES** this request. *See* Fed. R. Civ. P. 11(c)(1) (stating that the court "may impose" sanctions in its discretion).